**CAREY D. GORDEN**
California State Bar No. 236251
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467/Fax: (619) 687-2666
E-Mail: carey_gorden@fd.org

Attorneys for Mr. Luis Enrique Garza

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE IRMA E. GONZALEZ)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>**LUIS ENRIQUE GARZA**,<br><br>Defendant. | ) | Case No. 07CR3351-IEG<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |

**I.**

**STATEMENT OF FACTS**[1]

On November 27, 2007, at approximately 5:10 p.m., Mr. Garza was apprehended driving a 1992 burgundy Ford Crown Victoria in Calexico, California in which four undocumented aliens were found. Mr. Garza was subsequently arrested.

On December 12, 2007, the government charged Mr. Garza by way of indictment with three counts of violating 8 U.S.C. § 1324(a)(2)(B)(ii) (bringing in illegal aliens for financial gain), and three counts of violating 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) (Transporting Illegal Aliens and

[1] Unless otherwise stated, the "facts" referenced in these papers come from government-produced discovery that the defense continues to investigate. Mr. Garza does not admit the accuracy of this information and reserves the right to challenge it at any time.

Aiding and Abetting). The July 2007 grand jury indicted Mr. Garza. Mr. Garza has pled not guilty to all counts and charges.

These motions follow.

## II.

## MOTION TO COMPEL DISCOVERY

Mr. Garza requests the following discovery. His request is not limited to those items of which the prosecutor is aware. It includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

1. The Defendant's Statements. The government must disclose to Mr. Garza *all* copies of any written or recorded statements made by him; the substance of any statements made by Mr. Garza that the government intends to offer in evidence at trial; any response by him to interrogation; the substance of any oral statements that the government intends to introduce at trial and any written summaries of his oral statements contained in the handwritten notes of the government agent; any response to any Miranda warnings that may have been given to him; and any other statements by him. Fed. R. Crim. P. 16(a)(1)(A) and (B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the government must reveal *all* of Mr. Garza's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

2. Arrest Reports, Notes and Dispatch Tapes. Mr. Garza also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning, if such reports have not already been produced *in their entirety*, be turned over to him. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Garza or any other discoverable material is contained. This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and Brady v. Maryland, 373 U.S. 83 (1963). See also Loux v. United States, 389 F.2d 911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Garza are available under Fed. R. Crim. P. 16(a)(1)(A) and (B),

Fed. R. Crim. P. 26.2 and 12(I). Preservation of rough notes is requested, whether or not the government deems them discoverable.

3. Brady Material. Mr. Garza requests all documents, statements, agents' reports, and tangible evidence favorable to him on the issue of guilt and/or that affects the credibility of the government's case. Impeachment and exculpatory evidence both fall within Brady's definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

4. Any Information That May Result in a Lower Sentence. As discussed above, any information that may result in a more favorable sentence must also be disclosed pursuant to Brady, 373 U.S. 83. The government must disclose any cooperation or attempted cooperation by Mr. Garza, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the United States Sentencing Commission Guidelines Manual ("Guidelines"). Also included in this request is any information relevant to a Chapter Three adjustment, a determination of Mr. Garza's criminal history, or any other application of the Guidelines.

5. The Defendant's Prior Record. Evidence of a prior record is available under Fed. R. Crim. P. 16(a)(1)(D). Mr. Garza specifically requests a complete copy of any criminal record.

6. Any Proposed 404(b) Evidence. Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . .." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions).

This includes any "TECS" records (records of prior border crossings) that the government intends to introduce at trial, whether in its case-in-chief, impeachment, or rebuttal. Although there

is nothing intrinsically improper about prior border crossings, they are nonetheless subject to 404(b), as they are "other acts" evidence that the government must produce before trial. United States v. Vega, 188 F.3d 1150, 1154-1155 (9th Cir. 1999).

Mr. Garza requests that such notice be given *three weeks before trial* to give the defense time to adequately investigate and prepare for trial.

7. Evidence Seized. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

8. Request for Preservation of Evidence. The defense specifically requests that all **dispatch tapes** or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case be preserved. This request includes, but is not limited to **vehicle involved in the case**, **Mr. Garza's personal effects, and any evidence seized from Mr. Garza or any third party**. This request also includes any material or percipient witnesses who might be deported or otherwise likely to become unavailable (e.g. undocumented aliens and transients).

It is requested that the prosecutor be ordered to *question* all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

9. Henthorn Material. Mr. Garza requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material. See Kyles v. Whitley, 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991). This request includes, but is not limited to, any complaints filed (by a member of the public, by another agent, or any other person) against the agent, whether or not the investigating authority has taken any action, as well as any matter for which a disciplinary review was undertaken, whether or not any disciplinary action was ultimately recommended. Mr. Garza further requests production of any such information at least *one week* prior to the motion hearing and two weeks prior to trial. If the prosecutor is uncertain whether certain

information should be disclosed pursuant to this request, this information should be produced to the Court in advance of the motion hearing and the trial for an *in camera* inspection.

10. Tangible Objects. Mr. Garza requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, that are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Garza. Fed. R. Crim. P. 16(a)(1)(E). Specifically, Mr. Garza requests **color copies** of all photographs related to this case in the government's possession.

11. Expert Witnesses. Mr. Garza requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). This summary should include a description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s). See United States v. W.R. Grace, __ F.3d __, 2007 WL 2003307 *1, *9 (9th Cir., July 12, 2007); United States v. Duvall, 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not adequately summarize or describe police detective's testimony in drug prosecution where notice provided only a list of the general subject matters to be covered and failed to identify what opinion the expert would offer on those subjects). This request includes, but is not limited to, disclosure of the qualifications of any government witness who will testify that he understands and/or speaks Spanish or any other foreign language that may have been used during the course of an interview with Mr. Garza or any other witness.

Mr. Garza requests the notice of expert testimony be provided at a minimum of *three weeks prior to trial* so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any expert. See Kumho v. Carmichael Tire Co., 526 U.S. 137, 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

/ / /

12. Impeachment evidence. Mr. Garza requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Garza. See Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable under Brady, 373 U.S. 83. See United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); Thomas v. United States, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

13. Evidence of Criminal Investigation of Any Government Witness. Mr. Garza requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir. 1985).

14. Evidence of Bias or Motive to Lie. Mr. Garza requests any evidence that any prospective government witness is biased or prejudiced against her, or has a motive to falsify or distort his or her testimony. Pennsylvania v. Ritchie, 480 U.S. 39 (1987); Strifler, 851 F.2d 1197. **To this end, Mr. Garza requests discovery regarding the material witness's prior border apprehensions/contacts and any other potential impeachment information regarding this witness.**

15. Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity. Mr. Garza requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. Strifler, 851 F.2d 1197; Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980).

16. Witness Addresses. Mr. Garza requests the name and last known address of each prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses). Mr. Garza also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof)

/ / /

who will *not* be called as a government witness. United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984).

17. Name of Witnesses Favorable to the Defendant. Mr. Garza requests the name of any witness who made any arguably favorable statement concerning him or who could not identify him or who was unsure of his identity or participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); Chavis, 637 F.2d at 223; Jones v. Jago, 575 F.2d 1164,1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1979), cert. denied, 444 U.S. 1086 (1980).

18. Statements Relevant to the Defense. Mr. Garza requests disclosure of any statement that may be "relevant to any possible defense or contention" that he might assert. United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982). **This includes grand jury transcripts that are relevant to the defense motion to dismiss the indictment.**

19. Jencks Act Material. Mr. Garza requests production in advance of the motion hearing or trial of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963); see also United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes constitutes Jencks material when an agent reviews notes with the subject of the interview); see also United States v. Riley, 189 F.3d 802, 806-808 (9th Cir. 1999). Advance production will avoid the possibility of delay of the motion hearing or trial to allow Mr. Garza to investigate the Jencks material. Mr. Garza requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

20. Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Ms. Solorio requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses.

21. Agreements Between the Government and Witnesses. Mr. Garza requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or the advice not followed.

22. Informants and Cooperating Witnesses. Mr. Garza requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Garza. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants that exculpates or tends to exculpate Mr. Garza.

23. Bias by Informants or Cooperating Witnesses. Mr. Garza requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio, 405 U.S. 24. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24. Personnel Records of Government Officers Involved in the Arrest. Mr. Garza requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Mr. Garza. See Pitchess v. Superior Court, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

25. Training of Relevant Law Enforcement Officers. Mr. Garza requests copies of all written videotaped or otherwise recorded policies or training instructions or manuals issued by all

law enforcement agencies involved in the case (United States Customs Service, Border Patrol, INS, Department of Homeland Security, etc.) to their employees regarding: (a) the handling of vehicles suspected to be transporting contraband across the port of entry; (b) the referral to secondary inspection of persons within those vehicles; (c) the detention of individuals within those vehicles; (d) the search of those vehicles and the occupants of those vehicles, including the proper means of obtaining consent to search and what constitutes consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning of suspects and witnesses. Mr. Garza also requests all written or otherwise attainable information regarding the training of Customs agents at ports of entry in California to detect or discover contraband in vehicles entering the United States, including any training offered to Border Patrol, INS, or officers of Homeland Security Department, by the DEA or other law enforcement agencies or individuals.

26. Performance Goals and Policy Awards. Mr. Garza requests disclosure of information regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the detection of contraband. This request specifically includes information concerning performance goals, policy awards, and the standards used by Customs for commending, demoting, or promoting agents for their performance at the port of entry and their success or failure to detect illegal narcotics in general.

27. TECS Reports. Mr. Garza requests TECs reports. **Mr. Garza specifically requests any "TECS" records related to him, and the Ford Crown Victoria seized in this case**. **Any prior border crossings are considered “other acts” evidence which the government must produce before trial**. Vega, 188 F.3d at 1154.

28. Reports of Scientific Tests or Examinations. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), Mr. Garza requests disclosure and the opportunity to inspect, copy, and photograph the results and reports of all tests, examinations, and experiments conducted upon the evidence in this case, including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and that are

material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

29. Brady Information. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under Brady v. Maryland, 373 U.S. 83 (1963), impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

30. Any Proposed 404(b) Evidence. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1) and Fed. R. Evid. 404(b) and any prior convictions which would be used to impeach as noted in Fed. R. Crim. P. 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests notice two weeks before trial to give the defense time to investigate and prepare for trial.

31. Specific Requests. Mr. Garza specifically requests the opportunity to view the "A-File" of the material witness in this case. She also specifically requests all reports and documentation relating to prior apprehensions of the material witness.

32. Residual Request. The defendant intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.

## III.

## THIS COURT SHOULD DISMISS THE INDICTMENT BECAUSE THE INSTRUCTIONS PROVIDED TO THE GRAND JURY CANNOT BE RECONCILED WITH THE FIFTH AMENDMENT

The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions given to grand jurors in the Southern District of California. See United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005). See also United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006). Mr. Garza respectfully disagrees with the Navarro-Vargas majority opinion, and argues that this Court should dismiss the indictment based upon

structural error for the reasons set forth in Judge Hawkins' dissent in the en banc opinion, see Navarro-Vargas, 408 F.3d at 1210-11 (Hawkins, J., dissenting), and Judge Kozinski's dissent in the three judge panel decision. See United States v. Navarro-Vargas, 367 F.3d 896, 899-904 (9th Cir. 2004) (Kozinski, J., dissenting).

## IV.

## THIS COURT SHOULD PRECLUDE THE PROSECUTION FROM PROCEEDING UNDER AN AIDING AND ABETTING THEORY ON ANY OF THE COUNTS

Mr. Garza moves this Court to preclude the government from proceeding under an aiding and abetting theory on any of the counts in the indictment for the following reasons.

### A. Aiding and Abetting Requires Proof of An Additional Element, Beyond The Elements of the Underlying Offense, and Thus, This Element Must Be Alleged In the Indictment.

The Fifth Amendment to the Constitution provides in relevant part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V; see also United States v. Calandra, 414 U.S. 338, 343 (1974) (citation omitted) (stating that "[i]n this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by a 'presentment or indictment of a Grand Jury'"). An indictment must allege every essential element of the offense, including implied elements not present in the statutory language. United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); see also United States v. Pernillo-Fuentes, 252 F.3d 1030, 1034 (9th Cir. 2001) (holding that specific intent must be alleged in indictment charging an attempted reentry by a deported alien); accord Russell v. United States, 369 U.S. 749, 763-64 (1962). "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress." United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.

/ / /

/ / /

The Ninth Circuit has held that "[o]ur circuit law is clear that *aiding and abetting contains an additional element of specific intent*, beyond the mental state required by the principal crime."[2] United States v. Sayetsitty, 107 F.3d 1405, 1412 (9th Cir. 1997) (emphasis added); see also United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988) (expressly stating that "the elements necessary to convict an individual under an aiding and abetting theory are . . . that the accused had the specific intent to facilitate the commission of a crime by another"); United States v. Andrews, 75 F.3d 552, 555-57 (9th Cir. 1996) (reversing defendant's convictions for aiding and abetting murder and attempted voluntary manslaughter because there was insufficient evidence to show that the defendant "specifically intended" to facilitate the commission of the offense by someone else). Because a defendant is constitutionally entitled to a grand jury finding on every essential element necessary to convict him, this additional intent element must also be alleged in the indictment before the government may proceed under an aiding and abetting theory.

**B. The Cases Holding that the "Aiding and Abetting" Theory Is Implied in Every Federal Indictment Are Not to the Contrary.**

It is true that the Ninth Circuit has stated in dictum that aiding and abetting is implied in every indictment. See United States v. Armstrong, 909 F.2d 1238 (9th Cir. 1990); Gaskins, 849 F.2d at 1442; United States v. Michaels, 796 F.2d 1112, 1117-18 (9th Cir. 1986). However, none of these

---

[2] Indeed, Sayetsitty described the "aiding and abetting" jurisprudence as being "paralleled by [the Ninth Circuit's] cases dealing with attempts." Sayetsitty, 107 F.3d at 1412. As the Ninth Circuit explained:

> Attempts, like aiding and abetting, involve a degree of uncertainty regarding the defendant's purpose to commit the underlying crime-an uncertainty that is not present in the case of a principal who actually commits the crime. Because of that uncertainty, it is reasonable to require proof of a specific intent that would not be required of one who completed the crime.

Id. Even if the substantive offense required proof of only general intent, aiding and abetting required proof of specific intent. Thus, because the district court failed to provide an intoxication instruction for a defendant charged with aiding and abetting, the Ninth Circuit reversed the conviction Id. As Sayetsitty demonstrates, the government's decision to proceed under an aiding and abetting theory may open the door to possible defenses unavailable to the principal. This need for notice underscores why this element must be alleged in the indictment.

cases examined the language used in the indictment; they only examined the jury instructions. They accordingly do not resolve the question presented here.

Because the aiding and abetting statute, 18 U.S.C. § 2, "states a rule of criminal responsibility for acts which one assists another in performing," Nye & Nissen v. United States, 336 U.S. 613, 620 (1949), the acts set forth in section 2 merely describe the *means* of committing an offense. Armstrong, 909 F.2d at 1243; see also United States v. Causey, 835 F.2d 1289, 1292 (9th Cir. 1987); Michaels, 796 F.2d at 1117-18. Put another way, Armstrong and its antecedents do *not* hold that an indictment may omit the additional intent element required for a conviction under the aiding and abetting theory; they simply recognize that section 2 sets forth the *acts* of the defendant that expose him/her to liability as a principal. Because these cases do not discuss the additional intent element which is necessary to convict a defendant under the aiding and abetting theory, they are inapposite.[3]

## C. ***United States v. Garcia* Supports Mr. Garza's Argument.**

The government may try to rely on United States v. Garcia, 400 F.3d 816 (9th Cir. 2005). In that case the Ninth Circuit held that aiding and abetting liability is simply an "alternative theory of liability." Id. at 820. However, the Garcia court was simply determining whether a unanimity instruction should have been given and whether counts of the indictment were duplicitous. Id. at 818-19. The court rejected these arguments. Id. at 820. Nonetheless, the court acknowledged that "[o]f course, to prove liability as an aider abettor the government must establish beyond a reasonable doubt that the accused had the specific intent to facilitate the commission of a crime by someone else - and this is an 'element' that need not be established for conviction on the underlying offense." Id. at 819. Thus, the Garcia court acknowledged that aiding and abetting requires the government to prove the additional element of specific intent. It is well settled Ninth Circuit law that if the government is required to prove an element, they are also required to include the element in the

[3] If section 2 does not require all offense elements to be alleged in the indictment, then it is unconstitutional. Congress cannot exempt its statutes from the requirements of the Grand Jury Clause of the Fifth Amendment. Thus, if this Court holds that section 2 does not require all elements necessary to convict to be alleged in the indictment, then the statute must be struck down.

indictment.[4] Hill, 279 F.3d at 741. The government has failed to include this "element" and the indictment is, as a result, deficient.

**D. Neither the Prosecution Nor The Court May Broaden the Permissible Bases For Conviction Beyond Those Charged In the Indictment.**

Requiring the proof to remain true to the indictment enables the grand jury to protect citizens from the unilateral power of the government to institute criminal prosecutions. United States v. Miller, 471 U.S. 130, 139 (1985). In accordance with these principles, the United States Supreme Court has observed that:

> [i]f it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.

Ex parte Bain, 121 U.S. 1, 10 (1962), overruled on other grounds by United States v. Cotton, 122 S. Ct. 1781 (2002).[5] Accordingly, the Court has held that a district court may not broaden the possible bases for conviction beyond those alleged in the indictment. Stirone v. United States, 361 U.S. 212, 218 & n. 3 (1960).

"An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984); see also United States v. Cusimano, 148 F.3d 824, 829 (7th Cir. 1998) (recognizing that the court may not constructively amend the indictment through its instructions to the jury); United States v. Dipentino, 242 F.3d 1090, 1094 (9th Cir. 2001) (finding constructive amendment where district court instructed jury on work

---

[4] The purpose of the indictment is not just to put the defendant on notice of the charges. The indictment also serves the purpose of ensuring that a defendant is never convicted of any crime the elements of which were not all presented to the grand jury. United States v. Resendiz-Ponce, 425 F.3d 729 (9th Cir. 2005) (quoting and citing United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979) and Du Bo, 186 F.3d at 1179).

[5] Cotton did not overrule Bain, Russell or Stirone. Cotton, 122 S. Ct. at 1785. Indeed, it expressly left this holding of Bain intact. Id. Nor did the Court discuss whether an indictment error is a structural defect or whether such an error affects substantial rights. Id. at 1785-86. Thus, it does not aid this Court's analysis.

practice standard not alleged in indictment); United States v. Leichtnam, 948 F.2d 370, 380-81 (7th Cir. 1991) (finding constructive amendment where indictment charged the defendant with using a specific firearm and where the evidence and the district court's instructions "broaden[ed] the possible bases for conviction to include knowingly using or carrying *any* firearm") (emphasis in original). Indeed, one court observed that:

> [w]hat becomes essential to a charged offense in a particular case–that is, above and beyond what is necessary as a statutory matter–depends upon the structure of the indictment . . . and is completely within the government's control.

United States v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994) (internal citation omitted); United States v. Weissman, 899 F.2d 1111, 1114 (11th Cir. 1990) (citations omitted) (finding constructive amendment and observing that "it must be stressed that the government, through its ability to craft indictments, is the master of the scope of the charged RICO conspiracy . . .. It is the prosecution which sets the parameters to which a RICO conspiracy trial must be confined; having set the stage, the government must be satisfied with the limits of its own creation."). A constructive amendment always requires reversal because it deprives a defendant of his right to be tried only on the grand jury's charge. Stirone, 361 U.S. at 217; United States v. Floresca, 38 F.3d 706, 713 (4th Cir. 1994) (en banc).

Applying these principles here, if the indictment fails to set forth the additional element of specific intent required to convict a defendant under the aiding and abetting theory, then neither the government nor the district court can broaden the indictment to include aiding and abetting as a possible basis for conviction.

**E. The Indictment Here Does Not Authorize the Prosecution to Proceed Under an Aiding and Abetting Theory.**

Sayetsitty clearly holds that to convict a defendant under an aiding and abetting theory, the government must prove at least two different intent elements: The defendant must have specifically intended to aid the principal in the commission of the offense, and the defendant must have the requisite intent for the underlying offense. 107 F.3d at 1412. Aiding and abetting clearly requires proof of an *additional* intent element beyond the intent required by the statute. Id.

/ / /

Here, for example, to convict under an aiding-and-abetting theory, the government needs to prove that the defendant intended to aid a principal in the commission of the offense, in addition to proving the intent elements attributed to the principal. These are distinct elements, and under Hill, DuBo, and Pernillo-Fuentes, all of these elements need to be alleged in the indictment. See Du Bo, 186 F.3d at 1179; Pernillo-Fuentes, 252 F.3d at 1032; Hill, 279 F.3d at 741. Because the indictment here failed to allege this additional intent element, this Court may not allow the government to proceed under an aiding and abetting theory. A contrary holding constructively amends the indictment and impermissibly broadens the scope of the charges.

**V.**

**THIS COURT SHOULD GRANT LEAVE TO FILE FURTHER MOTIONS**

Mr. Garza and defense counsel have received 57 pages of discovery in this case and a DVD containing taped statements. Defense counsel believes discovery is not yet complete. Defense counsel requests leave to file further motions as new information comes to light.

**VI.**

**CONCLUSION**

For the reasons stated, Mr. Garza requests that this Court grant her motions.

Respectfully submitted,

DATED: March 18, 2008

/s/ Carey D. Gorden
**CAREY D. GORDEN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Garza