KAREN P. HEWITT
United States Attorney
WILLIAM A. HALL, JR.
Assistant U.S. Attorney
California State Bar No. 253403
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7046/(619) 235-2757 (Fax)
Email: william.a.hall@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LUIS ENRIQUE GARZA,<br>Defendant(s). | Criminal Case No. 07CR3351-IEG<br><br>DATE: April 1, 2008<br>TIME: 2:00 p.m.<br>Before Honorable Irma E. Gonzalez<br><br>UNITED STATES' STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

**I**

**STATEMENT OF THE CASE**

The Defendant, Luis Enrique Garza (hereinafter "Defendant"), was charged by a grand jury on December 12, 2007, with violating 8 U.S.C. §§ 1324(a)(2)(B)(ii), bringing in illegal alien(s) for financial gain, 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(II), transportation of illegal alien(s), and aiding and abetting. Defendant was arraigned on the six-count Indictment on December 13, 2007, and entered a plea of not guilty.

**II**

**STATEMENT OF FACTS**

Defendant was apprehended on November 27, 2007, by United States Border Patrol Agents ("BPAs") near Calexico, California. That day, at approximately 5:10 p.m., a BPA operating a

Remote Video Surveillance System observed four individuals illegally enter the United States by climbing over the international boundary fence approximately three miles east of the Calexico West Port of Entry. The BPA observed the individuals then attempt to hide on the side of Anza Road, which is the first road of the border. The BPA reported his observations to agents in the area.

Another BPA in the area observed a burgundy Ford Crown Victoria (hereafter "the vehicle") stop on the right side of the road, near the illegal entrants. After the individuals boarded the vehicle, the driver, later identified as Defendant, drove eastbound from the area. A records check of the vehicle revealed the California registration was expired and there was release of liability on the vehicle. The BPA maintained constant visual surveillance on the vehicle as it drove northbound on Barbara Worth Road. A controlled tire deflation device was successfully deployed on the vehicle, and the BPA utilized his emergency lights and siren in an attempt to stop the vehicle. Defendant failed to yield.

Defendant finally stopped the vehicle at the intersection of Highway 98 and Barbara Worth Road after the front two tires of the vehicle were completely flat. The BPA approached the vehicle and observed Defendant still sitting in the driver's seat. The BPA identified himself and questioned the occupants of the vehicle, and determined that the other passengers were all citizens of Mexico illegally in the United States.

In interviews, three of the passengers, Leonor Brigitte Reyes-Bautista, Florinda Pinos-Cowalez, and Jose Jesus Lara-Rente (hereafter "the material witnesses") stated that they were citizens and nationals of Mexico illegally present in the United States. All three material witnesses also stated that they were not in possession of any immigration documents allowing them to enter or to remain inside the United States. Each stated that they had made arrangements with an unknown smuggler in Mexicali, Mexico to be smuggled illegally into the United States, and climbed over the international boundary fence in order to be picked up by Defendant.

In a post-Miranda statement, Defendant admitted, in pertinent part, that he was offered $400.00 by a smuggler in Mexicali to smuggle illegal aliens; that he obtained the vehicle and a telephone from the smuggler after crossing into the United States; and that he saw the illegal entrants on the side of the road and stopped to pick them up.

## III

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE

#### 1. The Government Has or Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure

The government has disclosed, or will disclose well in advance of trial, any statements subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements *in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or recorded statements, written records containing substance of Defendant's oral statements *in response to government interrogation*, and Defendant's grand jury testimony).

a. The Government Will Comply With Rule 16(a)(1)(D)

Defendant has already been provided with his or her own "rap" sheet and the government will produce any additional information it uncovers regarding Defendant's criminal record. Any subsequent or prior similar acts of Defendant that the government intends to introduce under Rule 404(b) of the Federal Rules of Evidence will be provided, along with any accompanying reports, at a reasonable time in advance of trial.

b. The Government Will Comply With Rule 16(a)(1)(E)

The government will permit Defendant to inspect and copy or photograph all books, papers, documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are material to the preparation of Defendant's defense or are intended for use by the government as evidence-in-chief at trial or were obtained from or belong to Defendant.

Reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution, with the following exceptions: drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days, and vehicles are routinely and periodically sold at auction. Records of radio transmissions, if they existed, are frequently kept for only a short period of time and may no longer be available. Counsel should contact the Assistant United States Attorney assigned to the case two weeks before the scheduled trial date and the Assistant will make arrangements with the case agent for counsel to view all evidence within the government's possession.

c. The Government Will Comply With Rule 16(a)(1)(F)

The government will permit Defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, that are within the possession of the government, and by the exercise of due diligence may become known to the attorney for the government and are material to the preparation of the defense or are intended for use by the government as evidence-in-chief at the trial. Counsel for Defendant should contact the Assistant United States Attorney assigned to the case and the Assistant will make arrangements with the case agent for counsel to view all evidence within the government's possession.

d. The Government Will Comply With Its Obligations Under Brady v. Maryland

The government is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to the accused, or that pertains to the credibility of the government's case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

611 F.2d at 774-775 (citations omitted). See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial privileges not contained in the Federal Rules of Criminal Procedure).

e. Discovery Regarding Government Witnesses

(1) Agreements. The government has disclosed or will disclose the terms of any agreements by Government agents, employees, or attorneys with witnesses that testify at trial. Such information will be provided at or before the time of the filing of the Government's trial memorandum.[1/] The government will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972).

(2) Bias or Prejudice. The government has provided or will provide information related to the bias, prejudice or other motivation to lie of government trial witnesses as required in Napue v. Illinois, 360 U.S. 264 (1959).

(3) Criminal Convictions. The government has produced or will produce any criminal convictions of government witnesses plus any *material* criminal acts which did not result in conviction. The government is not aware that any prospective witness is under criminal investigation.

(4) Ability to Perceive. The government has produced or will produce any evidence that the ability of a government trial witness to perceive, communicate or tell the truth is impaired or that such witnesses have ever used narcotics or other controlled substances, or are alcoholics.

---

[1] As with all other offers by the government to produce discovery earlier than it is required to do, the offer is made without prejudice. If, as trial approaches, the government is not prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the government reserves the right to withhold the requested material until the time it is required to be produced pursuant to discovery laws and rules.

(5) Witness List. The government will endeavor to provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible government witnesses. See United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert. denied, 419 U.S. 834 (1974). Defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided to him or her.

(6) Witnesses Not to Be Called. The government is not required to disclose all evidence it has or to make an accounting to Defendant of the investigative work it has performed. Moore v. Illinois, 408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980). Accordingly, the government objects to any request by Defendant for discovery concerning any individuals whom the government does not intend to call as witnesses.

(7) Favorable Statements. The government has disclosed or will disclose the names of witnesses, if any, who have made favorable statements concerning Defendant which meet the requirements of Brady.

(8) Review of Personnel Files. The government has requested or will request a review of the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for Brady material. The government will request that counsel for the appropriate federal law enforcement agency conduct such review. United States v. Herring, 83 F.3d 1120 (9th Cir. 1996); see, also, United States v. Jennings, 960 F.2d 1488, 1492 (9th Cir. 1992); United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v. Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable

to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727 F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the materiality of the information within its possession in such personnel files, the information will be submitted to the Court for in camera inspection and review.

(9) Government Witness Statements. Production of witness statements is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies on direct examination. United States v. Taylor , 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir. 1981)). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623 F.2d 551, 556-57 (9th Cir. 1979).

The government reserves the right to withhold the statements of any particular witnesses it deems necessary until after the witness testifies. Otherwise, the government will disclose the statements of witnesses at the time of the filing of the government's trial memorandum, provided that defense counsel has complied with Defendant's obligations under Federal Rules of Criminal Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse Jencks" statements at that time.

f. The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time

Although the government has no objection to the preservation of agents' handwritten notes, it objects to requests for full production for immediate examination and inspection. If certain rough notes become relevant during any evidentiary proceeding, those notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions *and* they have been approved or adopted by the witness. United States v.

Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980); see also United States v. Griffin, 659 F.2d 932, 936-938 (9th Cir. 1981).

g. All Investigatory Notes and Arrest Reports

The government objects to any request for production of all arrest reports, investigator's notes, memos from arresting officers, and prosecution reports pertaining to Defendant. Such reports, except to the extent that they include Brady material or the statements of Defendant, are protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in connection with the investigation or prosecution of the case."

Although agents' reports may have already been produced to the defense, the government is not required to produce such reports, except to the extent they contain Brady or other such material. Furthermore, the government is not required to disclose all evidence it has or to render an accounting to Defendant of the investigative work it has performed. Moore v. Illinois, 408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980). If the United States intends to introduce TECS information at trial, discovery of the relevant TECS reports will be made at least by the time of the filing of its trial memorandum.

h. Expert Witnesses.

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial memorandum, the government will provide the defense with notice of any expert witnesses the testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of Evidence in its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications. Reciprocally, the government requests that the defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

i. Information Which May Result in Lower Sentence.

Defendant has claimed or may claim that the government must disclose information about any cooperation or any attempted cooperation with the government as well as any other information affecting Defendant's sentencing guidelines because such information is discoverable

under Brady v. Maryland. The government respectfully contends that it has no such disclosure obligations under Brady.

The government is not obliged under Brady to furnish a defendant with information which he or she already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), cert. denied, 479 U.S. 1094 (1987); United States v. Prior, 546 F.2d 1254, 1259 (5th Cir. 1977). Brady is a rule of disclosure. There can be no violation of Brady if the evidence is already known to Defendant. Assuming that Defendant did not already possess the information about factors which might affect their respective guideline range, the government would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. "No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains of value." United States v. Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

**B. THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED**

The Ninth Circuit's recent decisions in United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002), United States v. Navarro-Vargas, 408 F.3d 1184, 1186 (9th Cir. 2005) (en banc), and United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006), are dispositive on the issue of whether it was improper for the grand jurors in this case to be instructed that they should not consider the potential penalties associated with the prosecution. Although the instructions given in this case are indistinguishable to those given in Navarro-Vargas, Defendant invites this Court to ignore prior precedent. This Court should instead follow binding Ninth Circuit precedent and deny Defendant's motion.

The Ninth Circuit, in Cortez-Rivera, specifically held that it was proper to instruct the grand jury that it "should" not be concerned with punishment as follows:

> The distinction between "should" and "shall" is dispositive of Cortez-Rivera's contention. The contested charge stated, "Furthermore, when deciding whether or not to indict, you *should* not be concerned about punishment in the event of conviction; judges alone determine punishment." (emphasis added). According to

> our reasoning in *Marcucci*, by using "should," the challenged instruction does not place an absolute bar on considering punishment, but "leaves room-albeit limited room-for a grand jury to" consider punishment. Thus, the instruction does not preclude the grand jury from considering punishment and is therefore constitutional.

434 F.3d at 1041 (emphasis in original). Of note, the instructions provided to the grand jury by during its impanelment were substantively identical to those in the Navarro-Vargas and Cortez-Rivera cases.

Navarro-Vargas was the culmination of four years of litigation regarding the model grand jury instructions. After several panel opinions, the Ninth Circuit met *en banc* to settle the issue. As part of its opinion, the Navarro-Vargas *en banc* panel listed all of the allegedly improper portions of the grand jury instructions, including the punishment provision to which Defendant objects here. See Navarro-Vargas, 408 F.3d at 1187. The parties in Navarro-Vargas briefed the issue and the Court necessarily rejected it when it concluded "we hold that the provisions of the model grand jury instructions challenged here are constitutional." Id. at 1208.

Moreover, the dissent in Navarro-Vargas spoke specifically of the penalty provision in its disagreement with the majority decision, suggesting that this issue was in fact covered by the *en banc* panel. Id. at 1214. As such, this Court should deny Defendant's motion to dismiss the Indictment as it is foreclosed by Cortez-Rivera and Navarro-Vargas.

**C. THE UNITED STATES MAY PROCEED ON AIDING AND ABETTING**

Defendant argues that the Court should dismiss the Indictment or, alternatively, preclude the United States from proceeding under an aiding and abetting theory. Defendant argues that the Indictment is defective because it fails to charge him with the necessary *mens rea* for aiding and abetting. These contentions should be rejected.

An indictment need only contain those facts and elements so that the defendant may prepare a defense and invoke the Double Jeopardy clause when appropriate. See United States v. Gondinez-Rabadan, 289 F.3d 630, 634 (9th Cir. 2002). An indictment that sets forth the charged offense in the words of the statute itself is generally sufficient. United States v. Johnson,

804 F.2d 1078, 1084 (9th Cir. 1986 ). An indictment that puts a defendant on notice of the elements of the offense, even if only by citation to the statutory provision involved, is also sufficient. United States v. Gelzer, 50 F.3d 1133, 1138 (2d Cir. 1995); United States v. Oakie, 12 F.3d 1436, 1440-41 (8th Cir. 1993); United States v. Blackburn, 9 F.3d 353, 357 (5th Cir. 1993).

The Indictment in this case tracks the applicable statutory language, provides citations to the applicable statutes at issue, and more than adequately apprises Defendant of the crimes charged. Contrary to Defendant's assertions, the applicable Count charging Defendant with bringing in illegal aliens for financial gain and aiding and abetting is not defective. See Ramirez-Martinez, 272 F.3d at 911 (indictment charging a defendant with violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 was not defective); United States v. Angwin, 271 F.3d 786, 800 (9th Cir. 2001) (affirming decision to deny the defendant's motion to dismiss the count charging violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2), cert. denied, 535 U.S. 966 (2002).

Defendant's reliance on United States v. Du Bo, 186 F.3d 1177 (9th Cir. 1999), is misplaced. In Du Bo, the defendant's indictment failed to include a *mens rea* because the indictment only cited to the Hobbs Act. Id. at 1179. Here, unlike in Du Bo, the Indictment includes the requisite *mens rea*. An essential element of aiding and abetting liability is "that the accused had the requisite intent of the underlying substantive offense." United States v. Sayetsitty, 107 F.3d 1405, 1412 (9th Cir. 1997); see also United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988) (given that "the intent regarding the underlying substantive offense required to convict a defendant as an aider and abettor is the same intent necessary to convict him as a principal," the intent element was not missing from the original indictment).

Furthermore, "aiding and abetting is implied in every federal indictment for a substantive offense." See, e.g., United States v. Armstrong, 909 F.2d 1238, 1241 (9th Cir. 1990). Aiding and abetting is not a distinct offense from the underlying substantive crime. Garcia, 400 F.3d at 820 ("Aiding and abetting is simply one means of committing a single crime."). "Every indictment

for a federal offense charges the defendant as a principal and as an aider and abettor; thus a count for aiding and abetting is unnecessary." United States v. Cannon, 993 F.2d 1439, 1442 (9th Cir. 1993). Accordingly, even if references to the aiding and abetting statute had not been included in the Indictment, the United States would be free to proceed on an aiding and abetting theory.

**D. NO OPPOSITION TO LEAVE TO FILE FURTHER MOTIONS**

The United States does not object to the granting of leave to allow Defendant to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

**IV**

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that Defendant's motions, except where not opposed, be denied.

DATED: March 25, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ William A. Hall, Jr.
WILLIAM A. HALL, JR.
Assistant United States Attorney