ERICK L. GUZMAN
California State Bar No. 244391
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467/Fax: (619) 687-2666
E-Mail: carey_gorden@fd.org

Attorneys for Mr. Luis Enrique Garza

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE IRMA E. GONZALEZ)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07CR3351-IEG |
| Plaintiff, | ) | |
| v. | ) | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |
| **LUIS ENRIQUE GARZA**, | ) | |
| Defendant. | ) | |

# I.

## STATEMENT OF FACTS[1]

On November 27, 2007, at approximately 5:10 p.m., Mr. Garza was apprehended driving a 1992 burgundy Ford Crown Victoria in Calexico, California in which four undocumented aliens were found. Mr. Garza was subsequently arrested.

On December 12, 2007, the government charged Mr. Garza by way of indictment with three counts of violating 8 U.S.C. § 1324(a)(2)(B)(ii) (bringing in illegal aliens for financial gain), and three counts of violating 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) (Transporting Illegal Aliens and

[1] Unless otherwise stated, the "facts" referenced in these papers come from government-produced discovery that the defense continues to investigate. Mr. Garza does not admit the accuracy of this information and reserves the right to challenge it at any time.

Aiding and Abetting). The July 2007 grand jury indicted Mr. Garza. Mr. Garza has pled not guilty to all counts and charges.

These motions follow.

## II.
## THE COURT MUST SUPPRESS MR. GARZA'S STATEMENTS UNDER THE FIFTH AMENDMENT

### A. *Miranda* Warnings Must Precede Custodial Interrogation.

The Supreme Court has held that the government may not use statements, whether exculpatory or inculpatory, obtained during custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966). The law imposes no substantive duty upon the accused to make any showing other than that the statements were taken while the accused was in custody and subject to interrogation. Id. at 476. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of her freedom of action in any significant way. Id. at 477; see also Orozco v. Texas, 394 U.S. 324, 327 (1969). In Stansbury v. California, 511 U.S. 318 (1994), the Supreme Court stated that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Id. at 323.

When the government takes an accused's statement during custodial interrogation, a heavy burden rests upon its shoulders to demonstrate that the accused intelligently and voluntarily waived her privilege against self-incrimination. To satisfy this burden, the prosecution must introduce evidence sufficient to establish "that under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The Ninth Circuit has stated that "[t]here is a presumption against waiver." Garibay, 143 F.3d at 536. The standard of proof for a waiver of constitutional rights is high. Miranda, 384 U.S. at 475; see also United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great, the court must indulge every reasonable presumption against

waiver of fundamental constitutional rights) (citing Johnson v. Zerbst, 304 US 458, 464 (1938)). Finally, it should be noted that, since Miranda rests on a constitutional foundation, see Dickerson v. United States, 530 U.S. 428, 438 (2000), no law or local court rule relieves the government of its burden to prove that Mr. Garza voluntarily waived the Miranda protections. Miranda, 384 U.S. at 475.

The validity of the waiver depends upon the particular facts and circumstances of the case, and include the background, experience, and conduct of the accused. Edwards v. Arizona, 451 U.S. 477, 482 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1938); see also Garibay, 143 F.3d at 536; United States v. Bernard S., 795 F.2d at 751 ("a valid waiver of Miranda rights depends upon the totality of the circumstances, including the background, experience and conduct of the accused"). In Derrick v. Peterson, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary; and, (2) knowing and intelligent. Id. at 820. The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry [under] the [Fifth] Amendment . . . ." Id. The knowledge prong mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)); accord Garibay, 143 F.3d at 436. Thus, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Derrick at 820 (quoting Moran v. Burbine, 475 U.S. at 521) (emphasis in original) (citations omitted)).

Here, Mr. Garza was in custody upon being escorted to the secondary inspection area. Unless and until it shows the agents properly administered the Miranda warnings and obtained a knowing and intelligent waiver from Mr. Garza, the government cannot use evidence obtained as a result of any custodial interrogation that occurred after Mr. Garza's arrest. Miranda, 384 U.S. at 479.

The advisement in this case was coercive and therefore ineffective. Agent Torres discussed the questioning as if it is an eventuality. That is, agent Torres says that "before" he asks Mr. Garza any questions, the latter must first understand his rights. See Transcript of Interrogation of Luis

Garza at 2-3 (attached as Exhibit A).[2] Mr. Garza would reasonably with left with the impression that the advisement is just a requisite that has to be completed before he can begin. See id. at 2-3. It is not clear that the ensuing interrogation is optional.

Second, the advisement is misleading--or at least incomplete-- in that Agent Torres does not make clear that A) this is a criminal proceeding, or B) that he also enforces United States' criminal laws. Agent Torres states that he enforces "immigration and naturalization laws of the United States." See id. at 2. After such an advisement, Mr. Garza would reasonable be left with the impression that he was being interrogated as part of an immigration proceeding. Accordingly, to the extent that Mr. Garza was aware that he possessed any rights, he would believe that they were immigration-related rights and not criminal-rights. And, as Garibay teaches us, if Mr. Garza did not have an accurate understanding of his rights, he could not validly waive them. Garibay, 143 F.3d at 536.

Third, there was no intelligent waiver. The interview was conducted in Spanish. However, it is apparent at the outset that Mr. Garza does not speak perfect Spanish. Several times throughout the interview, Mr. Garza has to abandon Spanish, because he does not know the word for what he wants to say, or just plain uses words that do not exist. See i.e. Exhibit A at 4, lines 12-21; id. at 26, lines 20-27; id. at 27, lines 8-9.

Furthermore, the agents never ask Mr. Garza what language he prefers or if he is comfortable proceeding in Spanish. And Agent Torres read the Miranda warning rapidly in Spanish, which intensifies the difficulty of comprehension.

**B. The Government Bears the Burden of Proving that Mr. Garza's Alleged Statements Were Made Voluntarily**

Even when the procedural safeguards of Miranda have been satisfied, a defendant in a criminal case is deprived of due process of law if her conviction is founded upon an involuntary confession. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387

[2] "I wish to take a statement under oath, regarding that you to have [sic] smuggled people illegally in the United States. But before we ask you any questions, you must understand your rights . . . do you understand your rights.?"

(1964). The government bears the burden of proving that a confession is voluntary. Lego v. Twomey, 404 U.S. 477, 483 (1972).

In order to be voluntary, a statement must be the product of a rational intellect and free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne in a particular case, this Court must consider the totality of the circumstances. Schneckloth at 226; see also United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir. 1993). A statement is involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)); see also United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

This waiver was also not voluntary. Agent Torres, and his accomplice, had young Mr. Garza literally cornered, with his back against the wall, again literally. See DVD of interrogation attached as Exhibit B.[3] Mr. Garza was only eighteen years young when he was interrogated, and was double teamed by two senior agents in an intimidating and oppressive environment. These circumstances prevented a voluntary waiver. See Edwards v. Arizona, 451 U.S. at 482.

**C. This Court Must Conduct An Evidentiary Hearing.**

Accordingly, this Court must conduct an evidentiary hearing to determine whether the government can meet this burden and use Mr. Garza's statements against him. 18 U.S.C. § 3501. Since "'suppression hearings are often as important as the trial itself,'" these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading. See United States v. Prieto-Villa, 910 F.2d 601, 609-10 (9th Cir. 1990) (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)).

Mr. Garza's statements were made as a result of the coercive tactics employed by the agents. Unless and until the government demonstrates that these statements were made voluntarily, the statements may not be used for any purpose at trial.

[3] Mr. Garza requests the ability to play the DVD at the evidentiary hearing. Mr. Garza is attaching a proposed order for access to bring electronic equipment to the courtroom.

III.

**THIS COURT SHOULD GRANT LEAVE TO FILE FURTHER MOTIONS**

Mr. Garza and defense counsel have received 102 pages of discovery in this case and a DVD containing taped statements. Defense counsel believes discovery is not yet complete. Defense counsel requests leave to file further motions as new information comes to light.

IV.

**CONCLUSION**

For the reasons stated, Mr. Garza requests that this Court grant her motions.

Respectfully submitted,

DATED: July 18, 2008

*/s/ Erick Guzman*
**ERICK L. GUZMAN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Garza